UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA     :        **07 CR. 840 (PAC)**

       - v -              :

**GEORGE MYLES**,         :

                      :

            Defendant.

                      :
-------------------------------------------------------X


**DEFENDANT GEORGE MYLES' REPLY TO THE GOVERNMENT'S OPPOSITION
TO HIS MOTION TO TRANSFER VENUE**


LEONARD F. JOY
**DAVID E. PATTON**
The Legal Aid Society
Federal Defender Division
Attorney for **GEORGE MYLES**
52 Duane Street - 10th Floor
New York, New York  10007
Tel.:  (212) 417-8762

TO:   **MICHAEL GARCIA, ESQ.**
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York  10007
      Attn.:  **CHRISTOPHER LAVIGNE, ESQ.**
             Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **07 CR. 840 (PAC)** |
| - v - | : | |
| **GEORGE MYLES**, | : | |
| | : | |
| Defendant. | | |
| | : | |

-------------------------------------------------------X


### DEFENDANT GEORGE MYLES' REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO TRANSFER VENUE


The defendant, George Myles, submits this brief in reply to the Government's opposition to his motion to transfer venue to the Southern District of Florida.  Because the Government has utterly failed to show any real connection between the allegations in this case and the Southern District of New York, the motion should be granted.

### ARGUMENT IN REPLY

As anticipated in Mr. Myles' initial brief, the only connection offered by the Government between this case and New York are wire transfers sent from overseas to Mr. Myles' bank account in Florida that were cleared through New York.  Everything else in the Government's brief is an attempt to obscure this basic fact.  Indeed, the extreme lengths to which the Government goes in arguing that venue exists at all in this district only serves to highlight the absurdity and unfairness of prosecuting Mr. Myles here.

-1-

As Mr. Myles and the Government have already addressed each of the <u>Platt</u> factors in detail, this reply will focus on the most substantive issues presented: 1) the location of the events at issue, 2) the location of the witnesses and attorneys, and 3) the residence of Mr. Myles.

## I. The Location of the Alleged Criminal Conduct

In a remarkable effort to cloud the facts at issue, the Government argues that the "nerve center" of the charged conduct was the Middle East rather than Florida because Mr. Myles' alleged customers ("CC-1," "CC-2" and "CC-3") were located in Dubai. In doing so, the Government argues as though this case were captioned "United States v. CC-1, 2, and 3" and that it was those parties bringing the present motion. Of course, it is Mr. Myles and not his alleged overseas co-conspirators who is charged here, and it is his conduct that is at issue.

The sum total of the conduct alleged against Mr. Myles is the following:

- He operated a business in Pompano Beach, Florida selling spare aircraft parts overseas without the proper export license in violation of the Arms Export Control Act.

- In conducting that business, he received orders for aircraft parts from another Florida business and from buyers overseas, including the Middle East.

- After receiving orders for parts, he shipped them from his business in Florida to various locations overseas, including the Middle East.

- When shipping those parts from Florida, he undervalued the cost of the items shipped on the billing and customs labels.

- He received payment for those parts via wire transfer from Dubai to his bank account in Florida.

Tellingly, nowhere does the Government claim that Mr. Myles engaged in any conduct in New York. Instead, the Government points to the thinnest of reeds in discussing the relationship

between this case and the Southern District of New York. First, the Government notes that one

of the purchasers of parts from Mr. Myles ("CC-1") also solicited parts from a supplier in

Westchester, New York prior to doing business with Mr. Myles. The Government alleges no

connection between that supplier and Mr. Myles, and never alleges that any sale was actually

made by that supplier. Thus, nothing about that solicitation was in furtherance of the conspiracy

with which Mr. Myles is charged, and it is entirely insufficient to support venue in this district,

much less weigh against transfer. While the fact that a solicitation was received in Westchester

from CC-1 might explain why an investigation into CC-1 arose here, it does nothing to explain

why Mr. Myles should be prosecuted here.

Second, in arguing that venue exists at all in the Southern District of New York, the

Government states that the parts shipped from Florida to Dubai were sent via DHL which sends

all of its overseas shipments through JFK International Airport – located not in the Southern

District of New York but in the Eastern District of New York. Thus, the Government argues, it

*may* have venue in the Southern District because those shipping flights *may* have passed over

Southern District airspace. Whether those flights passed over Southern District airspace, and

whether the Government might technically have venue here, is virtually of no relevance to the

issue of transfer. It does not speak to any of the <u>Platt</u> factors nor to any sense of justice or

fairness in the location of venue.

Lastly, the Government relies on wire transfers made from Dubai to Mr. Myles' bank

account in Florida that were cleared through the Federal Reserve Bank of New York and a

member bank. In doing so, the Government greatly exaggerates the nature of those transfers by

claiming that "[w]hile Myles and his co-conspirators did not operate out of New York in the sense of having physical offices here, they did avail themselves of New York by, for example, having the proceeds of their scheme sent by wire transfers *from* Dubai *and* New York..." (Govt. Ltr. at 18). This assertion that wire transfers that are cleared through New York are equivalent to wire transfers that originate in New York is wholly without merit. Obviously, the Government's position would be much stronger had Mr. Myles received payment for parts from a customer in New York. In that case, the Government might credibly argue that Mr. Myles "availed" himself of New York. But those are not the facts here. Here, no funds ever originated or terminated in New York. Moreover, this "example" of Mr. Myles availing himself of New York is not one example of many as the Government's language suggests. It is the Government's sole basis for venue in this district. And simply because the clearance of wire transfers through the Federal Reserve Bank of New York or a member bank may provide venue (and Mr. Myles' contends it does not), it is once again of no moment in considering the <u>Platt</u> factors and the equities involved in weighing transfer.

As Judge Martin put it, "the issue of venue of a criminal prosecution raises two separate questions: 1) Where may the prosecution be brought?; and 2) Where, in fairness should the trial take place?" <u>United States v. Ohran</u>, 99 Cr. 142, 2000 WL 620217 at *2 (S.D.N.Y. May 12, 2000) (granting transfer). While the Government strains to argue that it *may* bring the prosecution in the Southern District of New York, it has no argument that it *should* be brought here.

The overwhelming weight of the case law supports Mr. Myles' position. The

-4-

Government does not, and cannot, point to a single case where transfer was denied involving circumstances with as tenuous a connection to New York as exists here. On the other hand, there are countless examples of transfer where there existed far greater connections to New York. See, e.g., United States v. Martino, No. 00 CR 389, 2000 WL 1843233 (S.D.N.Y. Dec. 14, 2000) (granting transfer in a tax evasion case where the defendant resided in New York at the time of the offense, used a New York address on the tax returns at issue, and maintained a New York bank account during the time period at issue); Ohran, 2000 WL 620217 (S.D.N.Y. May 12, 2000) (granting motion to transfer where the defendant was previously a resident of New York and was the trustee of a trust established in bankruptcy court in the SDNY and was accused of embezzling the funds of that trust after moving to Florida); United States v. Hanley, No. 94 Cr. 394, 1995 WL 60019 (S.D.N.Y. Feb. 10, 1995) (transferring case where defendants engaged in a stolen check scheme from California but where the check at issue was apparently stolen in New York); United States v. Russell, 582 F. Supp. 660 (S.D.N.Y. 1984) (transferring fraud case even where funds that were part of the scheme were held for a time in New York banks and where telephone calls and telexes were placed to and from New York); United States v. Alter, 81 F.R.D. 524 (S.D.N.Y. 1979) (granting transfer to Florida in a mail and wire fraud prosecution where the defendant's company at issue maintained an office in New York); United States v. Aronoff, 463 F.Supp. 454 (S.D.N.Y. 1978) (transfer granted in wire and mail fraud prosecution as to one of three defendants, thus requiring severance, even where the victim company was based in New York and where acts in furtherance of the scheme were committed in New York).

Mr. Myles did not avail himself of New York in any way, and every one of the

-5-

Government's allegations against him involves conduct in Florida. For this reason alone, transfer should be ordered.

## II. The Location of the Witnesses and Attorneys

The Government does not identify a single non-law enforcement witness located in New York.[1] Instead, it refers only to New York-based Immigration and Customs Enforcement ("ICE") agents as potential witnesses. As a basis for maintaining venue in New York, the location of the Government's agents should be given little consideration. The Government will always find it more convenient to try a case in the district it has chosen for prosecution -- that is presumably *why* it has chosen the particular district. No motion to transfer could ever succeed if the Government could simply point to the location of its own agents as the basis for venue.

Incredibly, the Government claims that Mr. Myles has failed to specifically identify witnesses located in Florida while at the same time stating that "the defendant's associates and employees in Florida" are potential Government witnesses. (Govt. Ltr. at 13). The fact that Florida witnesses will be a necessary component of any trial is self-evident -- it is the only location from which Mr. Myles' business associates, employees, and personal associates could possible be drawn. The fact that the defendant at this early stage of the litigation -- without having received any of the approximately 90 boxes of discovery -- has not disclosed with specificity which of the many potential Florida witnesses may be called should weigh lightly in

---

[1] The Government mentions the possibility of calling "employees of New York-based banks," but it is hard to see what relevance those witnesses could have if this case was tried in Florida. Their only possible relevance would be to establish venue if the trial were held in New York.

-6-

the Court's consideration.[2]

Mr. Myles has already identified in his initial brief numerous non-profit and charitable organizations with which he served that will likely serve as a source of character witnesses. See Myles Br. at 3 (listing, among other posts, his service on the board of directors of the Broward County Urban League, the Broward Chapter of the United Negro College Fund, the Broward County Girl Scouts of America Chapter, and the Broward County Chapter of the National Conference for Christians and Jews). Transfer to Florida will make it much more likely that he will be able to utilize those resources on his behalf See, e.g., Russell, 582 F.Supp. at 665 ("Even if, as is likely, not all of the character witnesses testify, the ability of the [defendants] to call them will be much less, and the cost much more, if the case is tried in New York rather than Memphis."). Moreover, the Government's claim that the importance of local witnesses is "anachronistic and outdated" simply flies in the face of well-settled -- and recent -- case law. See, e.g., United States v. Valdes, 05 Cr. 156, 2006 WL 738403, at *4 (S.D.N.Y. March 21, 2006) ("the impact of character witnesses is generally greater in the district where such witnesses live and work") quoting Martino, 2000 WL 1843233 at *6. The Government's disagreement on this point is not with Mr. Myles but with the many jurists from this district who continue to faithfully apply the Supreme Court's test in Platt.

---

[2]  To the extent that the Court would like more specific disclosure, we would ask to be allowed to present a potential witness list *in camera* so as not to prejudice Mr. Myles in his defense. Given that there are no known civilian witnesses in New York, that the overwhelming majority of factors weigh in favor of transfer, and that Mr. Myles has very limited information at this time without any discovery to accurately predict who might be called as witnesses, we maintain that the production of such a list is unnecessary.

As to the location of the attorneys, the Government's response is equally unavailing.  If this case is transferred to Florida, and the Department of Justice, with its hundreds of well-qualified Assistant United States Attorneys in the Southern District of Florida, chooses to prosecute a Florida businessman with New York prosecutors, that is certainly its prerogative.  But the Government should not be heard to complain about that decision.  See Russell, 582 F.Supp. at 665 (transferring case from New York to Tennessee finding that the major governmental interest in keeping the case in New York was to maintain the same prosecutorial trial team as from a related case and that such reasoning was unpersuasive); see also Hanley, 1995 WL 60019 at * 4 (S.D.N.Y. 1995) (transferring case from New York to California and finding that the "inconvenience to the Government is 'given little weight when other considerations of convenience suggest transfer'") quoting United States v. Gruberg, 493 F.Supp. 234, 243 (S.D.N.Y. 1979).  And even if it chooses to continue to prosecute the case with New York Assistant United States Attorneys, the Southern District of Florida office could surely provide assistance standing in on routine conferences and the like.

Despite the Government's assertion to the contrary, Mr. Myles' counsel in Florida is more familiar with his circumstances than undersigned counsel.  The Government is correct that Mr. Myles' New York counsel from the Federal Defenders of New York (FDNY) engaged in preliminary discussions with the Government about a possible disposition in the case.  Those discussions occurred, however, with Christopher Flood, who is no longer with the FDNY.  When he left the New York office in early September, I took over the case and have become familiar with it only with respect to those facts necessary to file this motion.  Given the large amount of

-8-

discovery pending and my limited time on the case, I have no more familiarity with it than would any attorney at the outset of representing Mr. Myles.

On the other hand, Kathleen Williams of the Federal Public Defender Office in the Southern District of Florida, has become intimately familiar with Mr. Myles' business and his personal circumstances. She filed a 50-page brief on his behalf in the Eleventh Circuit appealing his conviction in the Southern District of Florida for making false statements in connection with the sale of aircraft parts from the same business at issue in this case, Miles Aviation.[3] The brief required her to become familiar with the aircraft parts industry, and in it, she detailed the type of parts Mr. Myles' business sold and the many regulatory requirements of selling such parts. (The brief can be made available upon request).

The location of the witnesses and lawyers plainly favors transfer. To the extent that transfer will cause additional expense to the Government, "the Government is clearly in a better position [than defendant] to bear that expense." Ohran, 2000 WL 620217 at *4. All of the events and civilian witnesses are located in Florida, none are located in New York, and this case should be transferred there for prosecution.

## III.  Mr. Myles' Residence

Lastly, despite Mr. Myles' near lifetime spent in Florida, the Government attempts to downplay the significance of his residence because of his recent incarceration in Florida. If anything, the fact of his incarceration should weigh in favor of transfer.

---

[3]  In the first full paragraph on page 4 of Mr. Myles initial brief, I inadvertently used the first person in describing Mr. Myles' activities, including his pending litigation in Florida. This was a typographical error created when Mr. Myles' statements from his declaration were imported into the brief. I apologize for the error and any confusion.

A defendant who is free on bail is also free to return to his home residence during the pendency of a trial whenever he is not needed to appear in court. As the Court is well-aware, a complex criminal prosecution such as this, with voluminous discovery, can take many months before it is ready for trial, and in the event of a conviction, many more months before sentencing. A defendant who is not in custody would be afforded the vast majority of that time to be with his family in his home residence. Here, if transfer is denied, Mr. Myles would be forced to remain in custody in New York rather than in Miami where he could receive visits from his wife, daughters, siblings and elderly mother (for whom travel to Miami by car from Georgia is much more feasible than travel to New York, despite the Government's contention to the contrary).

The Court need not speculate about these hardships. Mr. Myles has been in custody in New York since May when he was first brought here and presented in this case. His family has not been able to visit him since that time. His wife is a sixth grade school-teacher and two of his three daughters are in college. His third daughter is a legal aid attorney in Palm Beach. Without Mr. Myles providing income, and in light of the vast expense he incurred in his recent federal trial in Florida, the family simply cannot afford the expense of traveling from Florida to New York where they have no family or friends.

The Government's argument might have more force if this case had any sort of real connection to New York. Certainly, a defendant who commits a crime in this district should not be heard to complain about his prosecution here -- regardless of the location of his residence. But that is not the situation here, and the only cases the Government cites in an effort to minimize the importance of a defendant's place of residence, and where transfer was denied,

-10-

involved just such circumstances.  See Govt. Opp. at 9-11, citing United States v. Wilson, No. 01 Cr. 53, 2001 WL 798018 (S.D.N.Y. July 13, 2001) (denying transfer in prosecution for false statements in SEC filings where company was listed on the New York Stock Exchange and where defendants engaged in meetings in New York and in telephone conference calls with analysts in New York); United States v. Conner, No. 00 Cr. 731, 2001 WL 114314 (S.D.N.Y. Feb. 9, 2001) (transfer denied in prosecution for insider trading where the defendants received their inside information from an employee at the New York offices of Goldman Sachs and CS First Boston); United States v. Spy Factory Inc., 951 F. Supp. 450, 457 (S.D.N.Y. 1997) (denying transfer in a prosecution for violation of the Wiretap Act where the defendant company, *inter alia*, sold numerous illegal devices to customers in the Southern District of New York).

The Government also cites United States v. Elson, 968 F. Supp. 900 (S.D.N.Y. 1997) in support of its proposition that the defendant's incarceration in the Southern District of New York weighs against transfer.  (Govt. Opp. at 10).  Elson, however, only stands for the unsurprising proposition that transfer across the East River from the Southern to the Eastern District of New York would not advance the convenience of the parties or the interest of justice.

Lastly, and most incredibly, the Government relies on Judge Karas' recent decision in Valdes to minimize the importance of a defendant's place of residence by quoting his statement that "While a defendant would always like to be close to his loved ones, this desire *alone* is insufficient to warrant a transfer." 2006 WL 738403, at *4 (S.D.N.Y. March 21, 2006) (internal citations omitted).  The Government fails to mention that Judge Karas found that the defendant's desire to be with his family weighed in favor of transfer and that he in fact *granted transfer* to the

-11-

Southern District of Florida.  Id. at *4 ("Although Defendants' desires *alone* are insufficient to warrant transfer, Defendants' residence and family responsibilities in Florida clearly favor transfer of venue to Florida").

Mr. Myles does not argue that his residence alone warrants transfer.  That every act he is accused of committing occurred in Florida, that every civilian witness is located in Florida (or elsewhere not in New York), and that he has spent virtually his entire life in Florida and has no connection whatsoever to New York, does warrant transfer.

## **CONCLUSION**

The interest of justice and the convenience of the parties and witnesses weigh strongly in favor of transfer to the Southern District of Florida.  We respectfully ask the Court to exercise its discretion and grant the motion.

Dated: New York, New York
          October 12, 2007

                                        LEONARD F. JOY, ESQ.
                                        Federal Defenders of New York
                                        Attorney for Defendant
                                         **GEORGE MYLES**
                                        52 Duane Street - 10th Floor
                                        New York, New York  10007
                                        Tel.:  (212) 417-8762


                                        _____
                                        **DAVID E. PATTON**

TO:     MICHAEL J. GARCIA, ESQ.
          United States Attorney
          Southern District of New York
          One St. Andrew's Plaza
          New York, New York  10007
          Attn.:   **CHRISTOPHER LAVIGNE, ESQ.**

-12-

Assistant United States Attorney